# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JOSEPH F. RIZZO, JR.,

        Petitioner,

    v.                                      Case No. 04-C-563

GARY R. McCAUGHTRY,

        Respondent.

## MEMORANDUM AND ORDER

### NATURE OF THE CASE

On June 14, 2004, Joseph Rizzo, Jr., filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the ground that his state incarceration is in violation of his constitutional rights to due process of law, a fair trial, to confront and effectively cross-examine his accusers and to compulsory process under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. This court conducted a preliminary examination of the petition in accordance with Rule 4 of the Rules Governing § 2254 Cases. By an order dated June 16, 2004, this court determined that it did not plainly appear from the face of the petition that the petitioner was not entitled to relief, and the respondent was ordered to answer the petition.

Both parties consented to the exercise of full jurisdiction by a United States magistrate judge. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C. § 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.). The petition for a writ of habeas corpus will be addressed herein.

## BACKGROUND

On September 11, 1998, a jury convicted the petitioner of three counts of second degree sexual assault of a child, one count of repeated sexual assault of the same child and one count of intimidating a witness. (Petition Under 28 U.S.C. §2254 for Writ of Habeas Corpus [Petition] at 2). The trial court sentenced the petitioner to 65 years in prison on November 5, 1998. Id.

The charges against the petitioner arose from the accusations of D.F., a then fourteen-year old neighbor.[1] Id. The parents of D.F. had asked the petitioner to help them with various personal and disciplinary problems they were having with their daughter. Id. The relevant facts relating to the petitioner's trial were set out by the Wisconsin Supreme Court in its decision on review, and are as follows:

> In June 1997, D.F. reported to police that Rizzo had sexual contact with her on several occasions beginning in 1995 and continuing through April or May 1996. She received treatment from Dr. Linda Marinaccio Pucci, a clinical psychologist, in 1996 after the assaults began. The initial treatment lasted about four months, but D.F. returned to Dr. Pucci in the summer of 1997 for additional therapy.

> Before trial, Rizzo moved the circuit court to order that D.F. submit to a pretrial psychological examination. He also filed a motion requesting that the circuit court conduct an in camera review of Dr. Pucci's "files, assessments, reports, notes, memoranda, and other records."

> In response to Rizzo's motions, the State provided a report prepared by Dr. Pucci, summarizing her knowledge of the case and her treatment of D.F. At a hearing on the motions, the State agreed that the circuit court could conduct an in camera review of D.F.'s treatment records. After conducting the in camera review, the court concluded that Rizzo was not entitled to the treatment records because Dr. Pucci's report fully summarized the contents of the records.

> At a subsequent hearing, Rizzo's attorney summarized his position on the requested psychological examination of D.F.:

---

[1] Although the petitioner uses the victim's full name in his petition and supporting briefs, the court will refer to her by her initials as was the practice of the state courts.

> [DEFENSE COUNSEL]: As far as the request for independent psychological, our position is with respect to that, that the State is intending to elicit expert testimony from Miss Pucci or Dr. Pucci concerning the issues that would be relevant to an independent fact finder's evaluation of whether a[sic] not a person is a victim of a sexual assault. *Then we believe that the predicate is laid based on the Maday criteria for the Court to order the alleged victim make herself available for independent psychiatric evaluation.*

(Emphasis added.) In response, the State represented that it had initially intended to elicit *Jensen*[2] evidence from Dr. Pucci. However, the State explained, after reviewing the case law, it decided not to use Dr. Pucci for *Jensen* evidence. The prosecutor stated:

> I will withdraw questions of Dr. Pucci in the area of *Jensen* type of evidence.... I am going to represent now, and will not intend on direct examination, subject to the defense opening the door based on cross-examination, elicit expert *Jensen* type testimony from Dr. Pucci.... If I do think it is necessary to elicit some *Jensen* testimony, I will call another expert and certainly put the Court and defense on notice with a curriculum vitae attached.

Based on the State's representations, the circuit court concluded that Rizzo was not entitled to the requested psychological examination of D.F.

At trial, Dr. Pucci gave extensive factual testimony with regard to her knowledge and treatment of D.F. Following this testimony, Dr. Pucci responded to the prosecutor's questions as to why "someone would, in this position" not immediately report a sexual assault. She testified that often people are reluctant to report sexual assaults because of threats by the assailant, embarrassment, or a fear that no one will believe them. Rizzo objected to this evidence and renewed his request for D.F.'s treatment records. The court overruled Rizzo's objection to the evidence and denied his request for the records. The jury found Rizzo guilty, and he appealed.

State v. Rizzo, 250 Wis. 2d 407, 418-420, 640 N.W.2d 93 (Wis. 2002).

On direct appeal, the petitioner presented three arguments: (1) the trial court's refusal to allow the defense to conduct an independent medical examination violated his

---

[2] *"Jensen* evidence" or "*Jensen* testimony" refers to the decision of the Wisconsin Supreme Court in State v. Jensen, 147 Wis. 2d 240, 257 432 N.W.2d 913, 920 (Wis. 1988), which held that a trial court may allow an expert witness to give an opinion about the consistency of a complainant's behavior with the behavior of victims of the same type of crime, only if the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.

constitutional rights; (2) the trial court's refusal to require the State to produce Dr. Pucci's file violated petitioner's constitutional rights; and (3) the trial court's admission of dissimilar and remote allegations of prior sexual misconduct by the petitioner was an erroneous exercise of discretion. (Petition, Exh. 2 at 2). While the court of appeals rejected the petitioner's third argument, it determined that the State had reneged on its pretrial representation that it would not present <u>Jensen</u> evidence, thus precluding a "level playing field" under <u>State v. Maday</u>, 179 Wis. 2d 346, 507 N.W.2d 365 (Wis. Ct. App. 1993).[3] (Petition, Exh 2 at 8). The court of appeals also determined that the circuit court should have granted the petitioner access to D.F.'s treatment records. (Petition, Exh. 2 at 7, n.6. As a result, the appellate court concluded that the petitioner was denied his rights to due process and a fair trial, reversed his conviction, and remanded his case for a new trial. (Petition, Exh. 2 at 8).

The state then filed a petition for review with the Wisconsin Supreme Court on January 18, 2001. (Petition at 2, ¶ 6). In its decision of February 27, 2002, the state supreme court reversed the decision of the state court of appeals and remanded the case to the circuit court for further proceedings. <u>Id.</u> Specifically, the state supreme court held as follows:

> In sum, we conclude that the State introduced *Jensen* testimony through an expert within the scope of *Maday* after representing to the circuit court that it would not do so. Consequently, Rizzo was deprived of his right to a pretrial determination under *Maday*. We determine that the proper remedy under the facts of this case is a remand for the circuit court to determine whether Rizzo was entitled to a pretrial psychological examination of D.F. Only if the court determines on remand that Rizzo was entitled to a psychological examination is a new trial necessary. In addition, we determine that the court of appeals

---

[3] The state appellate court in <u>Maday</u> held that "[w]hen the state manifests an intent during its case-in-chief to present testimony of one or more experts, who have personally examined a victim of an alleged sexual assault, and will testify that the victim's behavior is consistent with the behaviors of other victims of sexual assault, a defendant may request a psychological examination of the victim. A defendant making such a request must present the court with evidence that he or she has a compelling need or reason for the psychological examinations." <u>Maday</u>, 179 Wis. 2d 346, 360, 507 N.W.2d 365, 372.

erred in concluding that Rizzo was improperly denied access to D.F.'s treatment records. Accordingly, we reverse the court of appeals and remand for the circuit court to make a determination under *Maday*.

State v. Rizzo, 250 Wis. 2d at 441-442.[4]  In other words, the Wisconsin Supreme Court determined that a violation of petitioner's rights to due process and a fair trial could only be said to have occurred if the petitioner should have been granted his request for a pretrial psychological examination under Maday.  For that reason, the case was remanded for a determination under Maday.

On remand, the petitioner filed a motion seeking a determination that he was entitled to:  (1) an independent psychological examination; (2) access to D.F.'s treatment records; and (3) a new trial.  In support of his motion, the petitioner filed an affidavit from Dr. Marc Ackerman, a psychologist, whom he had retained.  Dr. Ackerman also testified at the evidentiary hearing held in connection with the petitioner's motion.  By order of December 20, 2002, the circuit court denied the petitioner's motion.  (Petition, Exh. 4).

In its written decision, the circuit court concluded that it was clear that Dr. Pucci's *Jensen* testimony was confined to delayed reporting and that the hearing established that "Dr. Ackerman could without conducting a psychological examination of [D.F.] offer an opinion concerning why someone would not immediately report such a crime just as Dr. Pucci did." (Petition, Exh. 4).  Accordingly, the circuit court held that "[t]here is no compelling need to examine [D.F.] to give that opinion in regard to people who are alleged to be victims

---

[4] The petitioner contends that remand was ordered to determine whether an independent psychiatric examination of the complaining witness should have been ordered *and* whether he was improperly denied access to D.F.'s treatment records.  This court disagrees.  The state supreme court specifically limited the issue on remand to whether the petitioner was entitled to a pretrial examination of D.F.  Separately, the state supreme court concluded that the court of appeals' determination that the petitioner was entitled to D.F.'s treatment records was erroneous, but it did not remand that issue to the circuit court.  The state supreme court did note, however, that if, on remand, the circuit court found that a new trial was warranted because the petitioner was entitled to a psychological examination of D.F., the trial court may have to revisit the treatment records issue.  State v. Rizzo, 250 Wis. 2d at 441, n.7.

of sexual abuse or sexual assault." Id.  In other words, the court found that it was not necessary for the petitioner to have an independent examination in order to achieve the "level playing field" required under Maday.  (Petition, Exh. 4 at 2).

The petitioner appealed that ruling on January 17, 2003.  (Petition at 3, ¶ 8; Answer at 2, ¶ 6).  The Wisconsin Court of Appeals affirmed the circuit court's decision on October 15, 2003, holding that the petitioner "failed to demonstrate that a psychological examination of the victim is necessary for his expert to develop opinion testimony that would counter the State's *Jensen* evidence concerning delayed reporting."  (Petition, Exh. 5 at 2, ¶ 1).  In so holding, the court reasoned:

> The purpose of the **Maday** rule is to level the playing field by giving the defendant an opportunity to counter the State's **Jensen** evidence.  **See Maday**, 179 Wis. 2d at 357 ("A defendant who is prevented from presenting testimony from an examining expert when the state is able to present such testimony is deprived of a level playing field . . . .  Fundamental fairness requires that [the defendant] be given the opportunity to present relevant evidence to counter this evidence from the state.")  We cannot find any statement, nor does Rizzo point to any statement, by Dr. Ackerman that he required a personal interview with the victim in order to rebut the State's Jensen testimony about delayed reporting.  In fact, on cross-examination, Dr. Ackerman essentially conceded that he could assess the delayed reporting aspects of the case without conducting a personal interview.

(Petition, Exh. 5 at 13-14).

A petition for review was filed with the Wisconsin Supreme Court by the petitioner on November 13, 2003.  The Wisconsin Supreme Court denied the petition for review on December 16, 2003.  Subsequently, the petitioner filed his petition for a writ of habeas corpus with this court.

## ANALYSIS

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

- 6 -

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The petitioner seeks a writ of habeas corpus based on the adverse state court rulings pertaining to his claims that he was entitled to an independent psychological examination of D.F. and access to D.F.'s treatment records. However, he contends that the deferential standard of review set forth in 28 U.S.C. § 2254(d) does not apply to his claim that he was denied access to D.F.'s treatment records in violation of his constitutional rights under the Sixth, Fifth and Fourteenth Amendments. He maintains that this claim is subject to pre-AEDPA de novo review because such claim was not adjudicated on the merits. Specifically, he states that the circuit court on remand "made absolutely no findings on [this] issue and ignored it completely in its brief decision denying Rizzo a new trial." (Petitioner's Supplemental Brief in Support of Petition for Writ of Habeas Corpus [Petitioner's Supp. Brief] at 3).

Contrary to the petitioner's contention, this claim was adjudicated on the merits by the Wisconsin Supreme Court when it ruled that the petitioner was not entitled to disclosure of D.F.'s privileged records, either before trial or after Dr. Pucci testified. Rizzo, 250 Wis. 2d 407, 640 N.W.2d 93. The circuit court on remand did not need to consider this issue on remand because the state supreme court had already determined that its prior decision

denying access to D.F.'s treatment records was not erroneous.  Although the state supreme court suggested that the circuit court may have to revisit the treatment records issue, such possibility was conditioned on the circuit court finding that the petitioner was entitled to a new trial.  Rizzo, 250 Wis. 2d at 441, n.7, 640 N.W.2d at 107, n.7.  Once the circuit court determined that the petitioner had not established that there was a compelling need for an independent psychological exam (and, therefore, a new trial), the court had no reason to reexamine the treatment records issue.  In addition, the circuit court's original decision at trial that the petitioner was not entitled to disclosure of Dr. Pucci's records also constitutes a ruling on the merits in connection with this claim.  Based on the above, the court finds that all of the claims advanced by the petitioner in his habeas corpus petition are subject to the deferential standard of review identified in 28 U.S.C. § 2254(d).

Having concluded that the standard set forth in §2254(d)(1) applies to all of the claims in this case, a discussion of the legal contours of that standard is appropriate. A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." Washington v. Smith, 219 F.3d 620, 628 (7th Cir. 2000) (quoting Williams v. Taylor, 529 U.S. 362, 404 [2000]).  The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> under the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

Id.  The court went on to explain that the "unreasonable application of" clause of §2254(d)(1) was broader and "allows a federal habeas court to grant habeas relief whenever the state

court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" Id. (quoting Williams, 529 U.S. at 413).

To constitute an "unreasonable application" of federal law, a state court ruling must be "more than incorrect or erroneous," Lockyer v. Andrade, 538 U.S. 63 (2003) (citing Williams, 529 U.S. at 410, 412), and perhaps more than "clearly erroneous," Hennon v. Cooper, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." Hall v. Washington, 106 F.3d 742, 748-49 (7th Cir. 1997). In Morgan v. Krenke, 232 F.3d 562, 565-66 (7th Cir. 2000) (quoting Williams, 529 U.S. at 411), the court explained that

> [u]nreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Therefore, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. Washington, 219 F.3d at 628.

As a threshold matter, the court must decide what constitutes"clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Lockyer, 538 U.S. at 71 (quoting Williams, 529 U.S. at 412).

With respect to a claim under 28 U.S.C. § 2254(d)(2), factual determinations of a state court are presumed to be correct and hence not "unreasonable," unless a petitioner can show otherwise by clear and convincing evidence. See Conner v. McBride, 375 F.3d 643, 649 (7th Cir. 2004); Ward v. Sternes, 334 F.3d 696, 704 (7th Cir.2003) (citing 28 U.S.C.

§ 2254[e][1]); Miller-El v. Cockrell, 537 U.S. 322, 339-42 (2003); see also Sanchez v. Gilmore, 189 F.3d 619, 623 (7th Cir.1999) (calling this a "rigorous burden of proof").

The petitioner contends that he is entitled to a writ of habeas corpus on the following grounds: (1) the decision to deny him access to treatment records and information relevant to cross-examine the witness against him was an unreasonable application of the Fifth, Sixth and Fourteenth Amendments as interpreted by the United States Supreme Court[5]; (2) the decision of the Wisconsin courts that he was not entitled to an independent psychological examination of the victim is an unreasonable application of clearly established Supreme Court precedent; and (3) the rulings of Wisconsin courts concerning the denial of access to treatment records, independent examination, confrontation rights and other acts testimony constitute an unreasonable determination of the facts and application of applicable Supreme Court precedent to them. See Petition at 5.

## Procedural Default

As an initial matter, the respondent argues that the petitioner has procedurally defaulted his claim that his right to cross-examine and confront D.F. was violated and his claim that the trial court improperly admitted other acts evidence at trial, such that this court should not reach the merits of those claims. The procedural default doctrine, like that of exhaustion, "is grounded in principles of comity, federalism, and judicial efficiency." Anderson v. Benik, 471 F.3d 811, 814 (7th Cir. 2006) (quoting Perruquet v. Briley, 390 F.3d 505, 514 [7th Cir. 2004]). To avoid procedural default, "a habeas petitioner must fully and fairly present his federal claims to the state courts." Boyko v. Parke, 259 F.3d 781, 788 (7th Cir.2001). "Fair presentment requires the petitioner to give the state courts a meaningful

---

[5] As framed by the plaintiff, this argument actually consists of two distinct claims: (1) that the non-disclosure of Dr. Pucci's records violated his right to confront and cross-examine D.F.; and (2) that the non-disclosure violated his right to cross-examine Dr. Pucci. See Answer ¶ 9; Petitioner's Supp. Brief at 6.

opportunity to pass upon the substance of the claims later presented in federal court." Id. (quoting Rodriguez v. Scillia, 193 F.3d 913, 916 [7th Cir.1999]). In the interests of federal-state comity, both the operative facts and controlling law must be put before the state courts. Ellsworth v. Levenhagen, 248 F.3d 634, 639 (7th Cir.2001) (citing Wilson v. Briley, 243 F.3d 325, 327 [7th Cir.2001]); Boyko, 259 F.3d at 788.

Fair presentment does not require a "hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." Anderson, 471 F.3d at 814-815 (citing Boyko, 259 F.3d at 788). However, it is essential that state courts be apprised of the constitutional nature of the claim. Anderson, 471 F.3d at 815 (citing Verdin v. O'Leary, 972 F.2d 1467, 1475 [7th Cir. 1992]). If the facts presented in the state court do not "evoke a familiar constitutional constraint, there is no reason to believe that the state courts had a fair opportunity to consider the federal claim." Id.

When determining whether a petitioner has fairly presented his federal claim to the state court, four factors must be considered: "(1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." Ellsworth, 248 F.3d at 639; Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001); Verdin, 972 F.2d at 1473-74.

The respondent first argues that the petitioner did not fairly present to the state courts his claim that the denial of access to treatment records deprived him of his right to confront and cross-examine D.F. (as opposed to Dr. Pucci). In response, the petitioner states only

that he "has met this standard throughout the court arguments" and that "the record in [his] case is replete with specific examples" of his having described the operative facts and legal theory on which his claim is based. (Reply Brief Supporting Petition for Writ of Habeas Corpus [Petitioner's Reply Brief] at 6; Petitioner's Supp. Brief at 6). However, the petitioner fails to cite to anything in the record to substantiate his assertions, nor does he claim that he "alleged a pattern of facts that is well within the mainstream of constitutional litigation." Id.

On the other hand, the respondent identified numerous instances in which the petitioner framed the issue regarding the treatment records as being limited to his right to confront and cross-examine Dr. Pucci. The respondent concedes that petitioner's initial brief on direct appeal discussed in general terms his right to confront the witnesses against him, and the Conclusion section refers to the defenses' inability "to fully and effectively cross-examine both [D.F.] and Linda Pucci." (Answer, Exh. B 21-23 and 51). However, these were only cursory references and, as noted by the respondent, the argument section of petitioner's brief repeatedly referred to the testimony of Dr. Pucci, and not that of D.F., as support for his argument that his right to confrontation had been infringed. See Answer, Exh. B at 21-23, 25-26, 28-30 and 32-33. More significantly, in the petitioner's reply brief on direct appeal, the caption to his argument read as follows: "Allowing Pucci to testify without allowing Rizzo an opportunity for meaningful cross-examination was reversible error." (Answer, Exh. D at 6 [capitalization omitted]).

The ruling of the court of appeals also indicates that the only constitutional issue before that court concerning Dr. Pucci's treatment records related to the petitioner's ability to confront and cross-examine Dr. Pucci. In particular, on direct appeal, the state appellate court held as follows:

> We hold that when Dr. Pucci gave *Jensen*-type testimony, she went beyond the scope of her summary report. Thus, when Rizzo argued that he was entitled access to the treatment records in order to cross-examine Dr. Pucci, the trial court should have granted Rizzo's request.

(Petition, Exh. 2 at 7 n.6).

Additional proof that the petitioner did not fully and fairly present to the state appellate courts his claim that his right to confront and cross-examine D.F. was infringed can be found in the arguments made in his brief submitted to the Wisconsin Supreme Court. Such arguments were limited to the contention that the petitioner's right to confront and cross-examine Dr. Pucci was infringed. For example, when distinguishing the cases relied on by the State for their argument that the court of appeals erred in ruling that the petitioner was entitled to production of Dr. Pucci's records, the petitioner maintained that "None of [those] cases involved the situation here where, **contrary to the prosecutor's assurance and during the expert's direct examination at trial**, the state's expert gave *Jensen*-type evidence and went beyond the scope of the summary report provided in lieu of access to those records." (Answer, Exh. G, 42-43 [emphasis in original]).

As noted by the respondent, the remainder of the petitioner's argument makes clear that he was only claiming that nondisclosure of the records adversely affected his ability to cross-examine Dr. Pucci. See e.g. Answer, Exh. G at 45 ("This information was essential to impeach and attack Dr. Pucci's credibility as it related to her sessions with [D.F.]."). The petitioner has not cited to anything in the record to rebut the respondent's substantiated representations.

For these reasons, the court finds that the petitioner's claim that the nondisclosure of Dr. Pucci's records violated the petitioner's right to confront and cross-examine D.F. is

procedurally defaulted because it was not fully and fairly presented to the state appellate courts.

In addition, the court finds that the petitioner procedurally defaulted his claim concerning the admissibility of other acts testimony.[6] In his habeas petition, the petitioner argues that the trial court ruling concerning the other acts testimony was "contrary to the analysis and factual consideration required by Supreme Court precedent to ensure a fair opportunity to defend against the state's allegations at trial." (Brief Supporting Petition at 48). In state court, the petitioner's challenge to the admissibility of such evidence was based solely upon Wisconsin evidentiary law under Wis. Stat. § 904.02. He did not claim that the trial court's ruling violated his federal constitutional rights. Further, this court does not believe (nor does the petitioner assert) that the facts of this case concerning the admissibility of other acts evidence "evoke a familiar constitutional constraint" which would have alerted the state courts to a federal constitutional issue. Anderson, 471 U.S. at 815.

Despite these procedural defaults, this court may address the merits of the claims if the petitioner either demonstrates cause for his default and prejudice resulting therefrom, or that a miscarriage of justice will result if the court does not consider the merits of his case. Perruquet, 390 F.3d at 514 (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 [1977]); Murray v. Carrier, 477 U.S. 478, 495-96 [1986]). Establishing cause ordinarily requires demonstrating an external obstacle preventing the petitioner from fairly presenting the federal claim in state court, and actual prejudice, not merely a possibility of prejudice, is required. Perruquet, 390 F.3d at 514-15. The miscarriage-of-justice-exception applies when the

_____

[6] Other than asserting that he has "continued to raise his objections to denial of due process and fair trial," the petitioner does not specifically address the respondent's argument that he has procedurally defaulted this claim. See Petitioner's Reply Brief at 29.

- 14 -

petitioner can demonstrate that he is actually innocent. Id. at 515 (citing Schlup v. Delo, 513 U.S. 298, 327-29 [1995]).

Here, the petitioner has not even alleged that he meets the requirements for the exceptions set forth above. Thus, this court will not reach the merits of his procedurally defaulted claims.

### Independent Psychological Examination

On remand, the state circuit court denied the petitioner's motion for an independent psychological examination of the complainant and a new trial on the ground that the petitioner had not established a compelling need or reason for the examination under State v. Maday, 179 Wis. 2d 346, 507 N.W.2d 365. See Petition, Exh. 5 at 10. The Wisconsin court of appeals affirmed that decision, finding that the trial court's ruling was a proper exercise of its discretion. See Id. at 13.

Presently, the petitioner argues that this determination involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. [7] As explained by the Court of Appeals for the Seventh Circuit, "[a] decision is an 'unreasonable application' of Court precedent if 'the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Morgan, 232 F.3d at 565 (quoting Williams, 529 U.S. at 413). The petitioner maintains that the state court's determination that he was not entitled to an independent psychological determination in this case amounts to an unreasonable application of Supreme Court precedent as identified in Chambers v.

---

[7] The respondent correctly recognizes that the petitioner is not arguing that the state court's decision was contrary to clearly established Supreme Court cases. Furthermore, the petitioner readily acknowledges that there is no Supreme Court decision which specifically recognizes that a defendant has a right to an independent psychological examination of a sexual assault victim in a criminal case. (Petitioner's Reply Brief at 9).

<u>Mississippi</u>, 410 U.S. 284 (1973), <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985) and <u>Hicks v. Oklahoma</u>, 447 U.S. 343 (1980). <u>See</u> Brief Supporting Petition at 10-11.

In <u>Chambers</u>, 410 U.S. at 294, the Supreme Court recognized the broad general principle that the right of an accused in a criminal trial to due process is essentially the right to a fair opportunity to defend himself against the State's accusations.[8] The Court in <u>Chambers</u> noted that among the minimum essentials of a fair trial is a defendant's right to be heard in his or her own defense and to offer testimony. <u>Id.</u> However, the Court also made clear that the fundamental right of the defendant to present witnesses and evidence is not absolute. <u>Id.</u> at 295. The defendant must comply with a state's established rules of procedure in order to accommodate the legitimate interests of the state in the trial process, namely, fairness and the reliable ascertainment of the truth. <u>Id.</u>

In <u>Ake</u>, 470 U.S. 68, the Court was asked to consider whether an indigent defendant advancing an insanity defense in a capital case is constitutionally entitled to the appointment of a psychiatrist. The Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one." <u>Id.</u> at 74. In so holding, the Court recognized the "elementary principle" grounded in large part on the Fourteenth Amendment's due process guarantee of fundamental fairness, that the State must take steps to assure that the defendant has a fair opportunity to present his defense. <u>Id.</u> at 76. Further, the Court

---

[8] Leon Chambers was arrested for murder, but another person, Gable McDonald, made and later repudiated a confession. During trial, Chambers was prevented from cross-examining McDonald, whom he had called to testify, under Mississippi's "voucher rule." Chamber's was also precluded, on hearsay grounds, from introducing the testimony of three persons to whom McDonald confessed. The Court determined that exclusion of the evidence, combined with the fact that he was not allowed to cross-examine McDonald, denied Chambers a fair trial in violation of his due process rights. <u>Chambers</u>, 410 U.S. at 302.

reasoned that because of the State's interest in the fair and accurate adjudication of criminal cases, "a State may not legitimately assert an interest in maintenance of a strategic advantage over the defense, if the result of that advantage is to cast a pall on the accuracy of the verdict obtained." Id. at 79.

Finally, in Hicks, 447 U.S. at 346, the Supreme Court recognized the general proposition that the arbitrary disregard of a defendant's right to liberty guaranteed under state law is a violation of due process. In Hicks, a defendant was convicted of unlawfully distributing heroin and the jury imposed a 40-year sentence pursuant to Oklahoma's habitual offender statute which instructed them that "if they found the [defendant] guilty, they 'shall assess [the] punishment at forty (40) years imprisonment." Subsequently, the relevant provision of the habitual offender statute was declared unconstitutional. Id. at 345. The defendant moved to have his sentence set aside, but the state appellate court denied that request reasoning that the defendant was not prejudiced by the invalid statute because the sentence he received was within the range of punishment that could have been imposed. Id. On certiorari, the Supreme Court noted that had the jury been properly instructed, they could have imposed any sentence of "not less than ten . . . years." Id. Thus, the Court concluded that the possibility that the jury would have returned a sentence of less than 40 years was substantial. The Court then stated its holding as follows:

> Oklahoma denied the petitioner the jury sentence to which he was entitled under state law, simply on the frail conjecture that a jury might have imposed a sentence equally as harsh as that mandated by the invalid habitual offender provision. Such an arbitrary disregard of the petitioner's right to liberty is a denial of due process of law.

Id. at 346.

In the instant case, both the state circuit court on remand and the Wisconsin Court of Appeals on review of that decision relied on Maday, 179 Wis. 2d at 354-357, 507 N.W.2d

369-371, in concluding that the petitioner's right to a "level playing field" and therefore his constitutional right to due process and a fair trial did not require that he receive an independent psychological examination of D.F. <u>See</u> Petition, Exh 4 at 2 and Exh. 5 at 13. In <u>Maday</u>, the Wisconsin Court of Appeals applied the general constitutional principles enunciated by the United States Supreme Court in <u>Chambers</u> and <u>Ake</u>, stating:

> Because fundamental fairness dictates that a defendant be able to obtain access to all relevant evidence necessary to be heard in his or her own defense, we conclude that a trial court has the discretion to grant a motion for a psychological examination of a victim. Before the trial court may grant such a request, the defendant must have presented evidence of a compelling need or reason for the psychological examination and the trial court must balance the rights of the defendant against the interests of the victim.

<u>Maday</u>, 179 Wis. 2d at 349-350, 507 N.W. 2d at 367. In arriving at this conclusion, the court in <u>Maday</u> cited <u>Chambers</u> for the general proposition that the defendant has a due process right to a fair opportunity to defend against the State's accusations. The <u>Maday</u> court also explained that "[a] defendant who is prevented from presenting testimony from an examining expert when the state is able to present such testimony is deprived of a level playing field." <u>Id.</u> In support of this conclusion, the <u>Maday</u> court relied on <u>Ake</u>, 470 U.S. at 79. Thus, although the Wisconsin Court of Appeals in the petitioner's case did not cite directly to <u>Chambers</u> and <u>Ake</u>, it applied the general constitutional principles set forth in those cases.

However, with respect to the petitioner's contention that the state courts unreasonably applied <u>Hicks</u>, neither the circuit court decision on remand nor the decision of the appellate court on appeal from the decision on remand applied the principles set forth by the Supreme Court in that decision. Moreover, the state court decision in <u>Maday</u> did not apply the principles identified in <u>Hicks</u>. Because the state courts here did not identify the general legal principle laid out in <u>Hicks</u> as a basis for its decision, this court cannot accept petitioner's

argument that the state court "unreasonably applied" that principle to the facts of his case. See Williams, 120 S. Ct. at 1523.[9]

As a result, the question before this court is not whether the decision to deny the petitioner's request for an independent psychological examination of D.F. was wrong. Rather, the question is whether it was unreasonable, in light of the general constitutional principles identified in Chambers and Ake, to say that the denial of the request did not interfere with the petitioner's due process rights to a fair trial or, as the Wisconsin Court of Appeals said, his right to a "level playing field." (Petition, Exh. 5 at 12 [citing Maday, 179 Wis. 2d at 357]).

In affirming the circuit court's decision on remand, the Wisconsin Court of Appeals ruled that the trial court properly exercised its discretion when it found that the petitioner had not demonstrated a compelling need for a psychological examination of D.F., despite the fact that the State had introduced Jensen testimony. (Petition, Exh. 5 at 13). Prior to reaching that conclusion, the appellate court also affirmed the circuit court's separate determination that the scope of Dr. Pucci's Jensen testimony was limited to D.F.'s reporting behaviors.[10] The exchange which the state courts deemed to constitute Jensen testimony is as follows:

> [Prosecutor] Q: Do you have an opinion to a reasonable degree of psychological certainty why someone would, in this position, would not immediately report a crime like this?

---

[9] This is not to say then that the state courts should have applied the legal principle to the petitioner's case. Indeed, it does not appear from the record that the petitioner ever asserted Hicks as a basis for its constitutional challenge to the circuit court's decision on remand. See Answer, Exh. J and L. However, neither party addresses this possible procedural default. Further, the petitioner does not contend that Hicks confers on criminal defendants an automatic entitlement to an independent psychological examination of a sexual assault victim or that the state court decisions here are "contrary to" the Supreme Court's decision in Hicks.

[10] The petitioner does not make the independent argument that the state court's conclusion that the Jensen testimony was limited to delayed reporting was contrary to or an unreasonable application of clearly established Supreme Court precedent. Rather, his argument is that the court should have ruled that "Pucci's entire testimony constituted Jensen opinions." Brief Supporting Petition at 36. However, on habeas review, the issue is not whether a state court's decision was erroneous, but whether it was "contrary to or an unreasonable application of" clearly established Supreme Court precedent.

- 19 -

> [Dr. Pucci] A: Often people are reluctant to report this kind of crime because of threats the offender or the abuser makes to them about it, either directly telling them not to tell or threatening them if they do tell. Often people are embarrassed. They may be afraid that they are not going to be believed. Sometimes they have some positive feelings about the abuser and may not want to get that person into trouble. Those tend to be the most common reasons.

(Petition, Exh. 5 at 7). Having determined that the scope of the Jensen testimony was limited to delayed reporting, the appellate court then analyzed the evidence presented by the petitioner and considered whether the petitioner had established a compelling need or reason for an independent examination under Maday in order to rebut that testimony.

Recognizing that the Maday court had identified seven factors for a circuit court to consider in making this determination, the appellate court, like the circuit court, found that only the seventh factor was relevant on appeal: whether, based on the testimony of the defendant's named experts, a personal interview with the victim is essential before the experts can form an opinion, to a reasonable degree of psychological or psychiatric certainty, that the victim's behaviors are consistent with the behaviors of other victims of sexual abuse.[11] (Petition, Exh. 5 at 10-11). The state appellate court concluded that the testimony of Dr. Ackerman, the petitioner's named expert, did not provide any basis for concluding that a psychological examination was needed in order to rebut the State's Jensen testimony regarding delayed reporting. Indeed, the record shows that on cross-examination, Dr.

---

[11] The seven factors identified by the Maday court are:
(1) the nature of the examination requested and the intrusiveness inherent in that examination;
(2) the victim's age;
(3) the resulting physical and/or emotional effects of the examination on the victim;
(4) the probative value of the examination to the issue before the court;
(5) the remoteness in time of the examination to the alleged criminal act;
(6) the evidence already available for the defendant's use; and
(7) whether, based on the testimony of the defendant's named experts, a personal interview with victim is essential before the experts can form an opinion, to a reasonable degree of psychological or psychiatric certainty, that the victim's behaviors are consistent with the behaviors of other victims of sexual abuse.
Maday, 179 Wis. 2d at 360, 507 N.W. 2d 365, 372.

Ackerman conceded that he could assess the delayed reporting aspects of the case without conducting a personal interview. See Petition, Exh. 5 at 13-14. In other words, the court found that neither fundamental fairness nor the requirement under Maday that the defendant be afforded a "level playing field" dictated that the petitioner be afforded an independent examination of the victim in this case. (Petition, Exh. 5 at 12-13).

In response to the instant habeas corpus petition, the respondent argues that in deciding whether the Wisconsin Court of Appeals reasonably applied Supreme Court precedent when it ruled on the petitioner's request for an independent examination under Maday, this court should limit its analysis to deciding whether such an exam was required in order to counter Dr. Pucci's Jensen testimony on delayed reporting as the state courts did. The petitioner, on the other hand, maintains that the state courts should have ruled that Dr. Pucci's Jensen testimony went beyond delayed reporting.

This court declines the plaintiff's invitation to conclude that all of Dr. Pucci's testimony concerning the victim's post-assaultive behavior constituted Jensen testimony. Throughout most of the state court proceedings, the petitioner cited as Jensen evidence only Dr. Pucci's testimony concerning delayed reporting. See Answer, Exh. D at 8-9, Exh. G at 28-33 and Exh. M at 2; Petitioner's Supp. Brief, Exh. 3 at 3-4. Indeed, it was not until his appeal on remand that the petitioner argued that the state supreme court's decision on remand had concluded that the Jensen testimony encompassed more than just delayed reporting. The court of appeals rejected the petitioner's argument, finding that the state supreme court had expressly relied on the two exchanges between Dr. Pucci and the prosecutor concerning delayed reporting when it concluded that the State had introduced Jensen evidence. (Petition, Exh. 5 at 8-9).

The petitioner has not pointed to anything in the record which calls this finding into question. Under these circumstances, this court concludes that the court of appeals' decision on remand to limit the scope of <u>Jensen</u> testimony to delayed reporting was reasonable.

Moreover, <u>Jensen</u> testimony is defined as "evidence that an alleged victim exhibited behaviors consistent with those commonly observed in sexual assault victims." <u>See</u> <u>Rizzo</u>, 250 Wis. 2d at 418, 640 N.W.2d at 96. Here, despite arguing that Dr. Pucci's <u>Jensen</u> testimony went beyond delayed reporting, the petitioner fails to identify any other portions of Dr. Pucci's testimony which meet this criteria. Hence, in determining whether the Wisconsin Court of Appeals reasonably applied Supreme Court precedent to the petitioner's request for an independent examination under <u>Maday</u>, this court will limit its analysis to deciding whether such an exam was required in order to counter Dr. Pucci's <u>Jensen</u> testimony on delayed reporting, as the state courts did.

In his habeas petition, the petitioner does not argue that the state-created procedure established by <u>Maday</u> or its requirement that the defendant must present evidence that he has a compelling need or reason for the requested independent examination runs afoul of existing Supreme Court precedent. To the contrary, the petitioner maintains that <u>Maday</u>'s state-created procedures were founded upon and are consistent with the general principles identified in <u>Chambers</u> and <u>Ake</u>.

Here, the record shows that the state courts analyzed the petitioner's request for an independent examination under <u>Maday</u> and ruled that it was not necessary for Dr. Ackerman to personally interview D.F. in order to rebut the State's <u>Jensen</u> testimony. This conclusion was based on the fact that the petitioner's own independent examiner testified that he would be able to assess the <u>Jensen</u> testimony concerning delayed reporting without conducting a

- 22 -

Case 2:04-cv-00563-PJG   Filed 08/20/07   Page 22 of 32   Document 24

personal interview. In light of Dr. Ackerman's testimony, this court cannot say that the state appellate court's conclusion was objectively unreasonable.

Furthermore, the record does not substantiate the petitioner's contention that the state circuit court unreasonably applied Maday when it "chose to ignore the various *Maday* factors." (Petitioner's Reply Brief at 10-11). While the state circuit court did not specifically recite the factors set forth in Maday, it did identify the applicable "compelling need" standard and held the requisite evidentiary hearing which allowed the petitioner to present evidence as to each factor. Moreover, as the state appellate court noted in the appeal of the decision on remand, only one of the Maday factors – the seventh – was relevant to the issue before it. The petitioner has not identified any case law suggesting that one factor cannot be determinative under the Maday standard.

The Maday decision makes it clear that denying a defendant's request for an independent examination is within the discretion of the trial court if a compelling need is not shown. The Supreme Court precedent set forth in Chambers and Ake instructs that in appropriate circumstances, the exclusion of evidence violates a defendant's right to present a defense; however, the defendant's right to present evidence is not absolute. Chambers, 410 U.S. at 294-295; Ake, 470 U.S. at 76; Morgan, 232 F.3d at 569. The Court's decision in Chambers also teaches that states retain the right to establish procedures for running their criminal trials. Chambers, 410 U.S. at 295.

It is within the discretion of Wisconsin courts to exclude an independent psychiatric examination even in the face of the admission of Jensen testimony. That means that some defendants, like the petitioner, who request an independent psychological examination will be denied their request. Thus, even if this court did not agree with the state court's finding that the petitioner was not entitled to an independent psychiatric examination, this court

- 23 -

cannot say that its decision to deny the request amounted to an unreasonable application of clearly established Supreme Court precedent.

## Access to Treatment Records

The state circuit court denied petitioner's pretrial discovery request for access to D.F.'s treatment records, as well as his renewed request during trial for disclosure of the records following Dr. Pucci's testimony. On direct appeal, the Wisconsin Court of Appeals reversed the trial court's decision, finding that the petitioner's constitutional rights to due process and to a fair trial were violated. (Petition, Exh. 2 at 8). On review before the Wisconsin Supreme Court, the petitioner maintained that the circuit court improperly denied his renewed request for the records during trial, arguing that without the records he was deprived of his right to present a defense. The Wisconsin Supreme Court disagreed and found that the circuit court's denial of the petitioner's renewed request for the treatment records correctly reaffirmed the court's pretrial decision denying the request. Rizzo, 250 Wis. 2d at 441, 640 N.W.2d at 107.

In his habeas petition before this court, the petitioner argues that the records were essential to impeach Dr. Pucci and attack her credibility and that the decision of the Wisconsin Supreme Court denying him access to such records was based on an unreasonable application of clearly established Supreme Court precedent.[12] The parties agree that the standard governing a request for disclosure of privileged or confidential

---

[12] The petitioner also contends that the treatment records "went directly to the complainant's [D.F.'s] credibility . . . ." (Brief Supporting Petition at 21). As noted earlier in this decision, the petitioner procedurally defaulted his claim that nondisclosure of Dr. Pucci's records prior to trial violated his constitutional right to cross-examine D.F. Thus, his claim concerning access to Dr. Pucci's treatment records is limited to his contention that he was entitled, under existing Supreme Court precedent, to access to these records in order to cross-examine Dr. Pucci.

- 24 -

psychiatric, investigative or medical information is governed by the Supreme Court decision in Pennsylvania v. Ritchie, 480 U.S. 39 (1987).

The facts of Ritchie were summarized by the Court of Appeals for the Seventh Circuit as follows:

> In that case, defendant George Ritchie was charged with committing various sex offenses against his 13-year-old daughter. During pre-trial discovery, Ritchie sought review of counseling files maintained by a child protective agency concerning his daughter. Ritchie, 480 U.S. at 43, 107 S.Ct. 989. He argued that disclosure of the files was necessary because it might aid in his defense, perhaps revealing statements his daughter made to the agency counselor that were inconsistent with her trial statements, or show that she acted with an improper motive. Id. at 51, 107 S.Ct. 989.

Davis v. Litscher, 290 F.3d 943, 946 (7th Cir. 2002). On appeal, the Supreme Court applied a Fourteenth Amendment due process analysis to the defendant's claims and held that fundamental fairness required that the defendant receive an in camera review of the records to determine whether the records contain exculpatory information or information that would effect the outcome of the trial. Ritchie, 480 U.S. at 60-61. The Court reasoned that an in camera review balances the Fourteenth Amendment rights of the defendant in ensuring a fair trial and the needs of the state or the individual to keep those records private. Id. at 61.

In arriving at this conclusion, the Court explained that under the Fourteenth Amendment, "it is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." Id. at 57 (citing United States v. Agurs, 427 U.S. 97 [1976]). According to the Court, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. (quoting United States v. Bagley, 473 U.S. 667, 682 [1985]). Further, "a 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id.

- 25 -

In the petitioner's case, the Wisconsin Supreme Court relied on the decision of the Wisconsin Court of Appeals in State v. Shiffra, 175 Wis. 2d 600, 499 N.W.2d 719 (Wis. Ct. App. 1993), in concluding that the denial of petitioner's request for access to D.F.'s treatment records did not deprive him of his constitutional right to present a defense. Specifically, the court held that "under Shiffra, a defendant is not entitled to the records of a victim's treating therapist simply to impeach the therapist's credibility." Rizzo, 250 Wis. 2d at 441, 640 N.W.2d at 107. In Shiffra, the appellate court applied the standard set forth in Ritchie when it established the procedure for in camera review of a victim's confidential records. Thus, although the Wisconsin Supreme Court did not cite directly to Ritchie, it did apply the constitutional standard therein, and the parties agree that this was the correct legal standard. Therefore, the question becomes whether the state supreme court's conclusion that the petitioner was not entitled to the records of a victim's treating therapist simply to impeach the therapist's credibility constituted an unreasonable application of Ritchie.

Before the trial in petitioner's case, the State agreed that the petitioner had made a preliminary showing of materiality and the trial court then conducted an in camera review of D.F.'s treatment records in accordance with Shiffra. The trial court compared the records to Dr. Pucci's summary report (which had been provided to the petitioner prior to trial) and concluded that the petitioner was not entitled to the records, stating as follows:

> Well, the Court has had the opportunity to review the psychological file, and what I did first was go over the summary and see what the summary said; and then I began to page through the doctor's file. . . . Well, very frankly, if you go through this entire file and you go through it essentially line by line, you won't find anything different than what you find in her summary. . . . [T]here is really no information that is contained in this file that you don't know about already that would be exculpatory in any way or even lead to anything that is exculpatory. . . .

Rizzo, 250 Wis. 2d at 438-439, 640 N.W.2d at 106.

After Dr. Pucci gave her <u>Jensen</u> testimony during the trial, the petitioner renewed his request to access the treatment records, arguing that he needed the records to effectively cross-examine her.  Again, the trial court denied the petitioner's request concluding "'[t]here has been no showing that would satisfy the Court that would be appropriate.'"  <u>Id.</u>

On review, the Wisconsin Supreme Court determined that the trial court did not err in denying the petitioner access to the treatment records.  The court first rejected the petitioner's contention that he was entitled to the treatment records because Dr. Pucci's <u>Jensen</u> testimony at trial went beyond the scope of her summary report.  The court stated:

> Although Dr. Pucci ventured beyond the scope of her summary report at trial in that the report did not say she would give *Jensen* testimony, it does not automatically follow that Rizzo was entitled to D.F.'s treatment records. Because Dr. Pucci's factual testimony was anticipated, her *Jensen* testimony did not change the scope of relevant information in D.F.'s treatment records. The argument that Rizzo could somehow impeach Dr. Pucci's expert knowledge of the common behaviors of sexual assault victims by accessing the treatment records of one of her patients is not persuasive.

<u>Id.</u> at 440.

The court then addressed the petitioner's argument that he needed the treatment records to cross-examine Dr. Pucci because it was unclear whether a statement in quotation marks in the summary report was attributable to Dr. Pucci or to D.F.'s parents.  In rejecting this argument, the court stated:

> Dr. Pucci testified that these were not the parents' exact words, but rather her interpretation of what they had said. She explained that she placed them in quotation marks to signify that she was quoting another source, an intake form.
>
> Rizzo's position appears to be that he was entitled to cross-examine Dr. Pucci using the treatment records because if the records would have revealed the source of the quote as D.F.'s parents, this would have undermined Dr. Pucci's credibility. We do not adopt Rizzo's position because it would eviscerate the procedure for in camera review set forth in *Shiffra*, which protects a victim's confidential records. In effect, Rizzo's position would provide that the defendant must receive full access to the victim's treatment records in every case in order to effectively cross-examine an expert who treated the victim.

- 27 -

> That is in stark contrast to the in camera procedure under *Shiffra*, which specifically balanced the victim's interest in confidentiality against the constitutional rights of the defendant. *See* 175 Wis.2d at 609-10, 499 N.W.2d 719.

Id.

The petitioner contends that the state supreme court's conclusion violates his right to obtain and present impeachment evidence as recognized in <u>Ritchie</u>. Contrary to the petitioner's suggestion, the Supreme Court's decision in <u>Ritchie</u> does not stand for the proposition that the defendant has an unfettered right to obtain impeachment evidence contained in a victim's confidential records. <u>See</u> <u>Ritchie</u>, 480 U.S. at 59 ("A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [State's] files."). Rather, the Supreme Court in <u>Ritchie</u> held that a defendant's interest in ensuring a fair trial can be protected fully by requiring that confidential files be submitted only to the court for <u>in</u> <u>camera</u> review.

Here, the trial court conducted an <u>in</u> <u>camera</u> inspection of the requested records as directed by <u>Ritchie</u>. Thus, under existing Supreme Court precedent, the petitioner received everything to which he was constitutionally entitled. The court agrees with the Wisconsin Supreme Court that accepting the petitioner's argument that access to the type of confidential records implicated in <u>Ritchie</u> and <u>Shriffa</u> after the court has conducted an <u>in</u> <u>camera</u> review and determined that the records contained no exculpatory evidence, solely for the purpose of searching for information to impeach the state's expert, would "eviscerate the procedure for <u>in</u> <u>camera</u> review" identified in those cases. <u>Rizzo</u>, 250 Wis. 2d at 440-441, 640 N.W.2d at 107. The position advanced by the petitioner – that defendants are entitled under the Constitution to receive full access to the victim's treatment records in every case in order to effectively cross- examine an expert who treated the victim – has no support in <u>Ritchie</u>.

- 28 -

As an additional matter, the court notes that in framing his challenge to the denial of his request to the treatment records, the petitioner combines the language of both the Sixth Amendment and Fourteenth Amendment. As noted earlier, the right recognized in <u>Ritchie</u> was premised upon the due process clause of the Fourteenth Amendment. This court rejects the petitioner's invitation to read <u>Ritchie</u> as establishing that the Confrontation Clause of the Sixth Amendment is implicated in claims involving pretrial access to information that would enable effective cross-examination of a prosecution witness. While this position was urged by Justice Blackmun in his concurring opinion in <u>Ritchie</u>, it is not the holding of that case because Justice Blackmun's view was not shared by any other concurring Justice. <u>See</u> <u>Marks</u> v. <u>United States</u>, 430 U.S. 188, 193 (1977) ("[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"). <u>Id.</u> at 193 (citing <u>Gregg</u> v. <u>Georgia</u>, 428 U.S. 153, 169 n.15 (1976)).

In addressing the Confrontation Clause claim advanced in <u>Ritchie</u>, the plurality of the Justices determined that that clause was not violated by withholding of the confidential file. The Court reasoned that under the Confrontation Clause, "it would only have been impermissible for the judge to have prevented Ritchie's lawyer from cross-examining the daughter." <u>Ritchie</u>, 480 U.S. at 54. Because defense counsel in <u>Ritchie</u> was able to cross-examine all of the trial witnesses fully, the Court ruled that there was no violation of the Confrontation Clause. <u>Id.</u>

In the instant case, the petitioner does not suggest that he was prevented from cross-examining Dr. Pucci. Thus, according to the principles set forth in <u>Ritchie</u>, the court cannot say that the trial court's ruling concerning access to D.F.'s treatment records implicated the

petitioner's rights under the Confrontation Clause. In any event, the petitioner himself acknowledges that the Confrontation Clause does not afford him any greater protection than the due process clause of the Fourteenth Amendment. See Brief Supporting Petition at 23 ("While the Supreme Court's decisions applicable to Rizzo's case cite the Confrontation Clause, Compulsory Process and the Due Process Clause, regardless of the constitutional underpinning, their message is the same.").

Finally, plaintiff also argues that the failure of the circuit court on remand to address his request for the records or to conduct another in camera review of the records also constitutes an unreasonable application of Ritchie. The problem with the petitioner's argument is that it ignores the fact that the records issue was not before the court on remand. Rather, the Wisconsin Supreme Court remanded the case to the circuit court for a determination as to "whether Rizzo was entitled to a pretrial psychological examination of D.F." Rizzo, 250 Wis. 2d at 441, 640 N.W.2d at 107. The court instructed that a new trial would be necessary "[o]nly if the court determines on remand that Rizzo was entitled to a psychological examination" and that if he received a new trial, "the court may or may not need to revisit the treatment records issue." Id. at 441, n.7, 640 N.W.2d at 107, n.7. A new trial was not ordered in this case and, therefore, the circuit court on remand did not unreasonably apply Ritchie by refusing to consider the petitioner's arguments concerning access to the treatment records.

Accordingly, this court finds that the Wisconsin Supreme Court's determination that the petitioner's right to present a defense was not violated by the trial court's denial of his request for access to the treatment records of D.F. is not an unreasonable application of clearly established Supreme Court precedent.

**<u>Unreasonable Determination of the Facts</u>**

The petitioner also makes the generalized argument that "in light of all the evidence presented in pretrial motions at trial, on remand and in the various appeals undertaken by Rizzo, the rulings of the Wisconsin state courts, with the exception of the first Court of Appeals decision, constitute an unreasonable determination of the facts and application of applicable Supreme Court precedent to them." (Brief Supporting Petition at 11). In habeas corpus proceedings, the factual determinations are presumed to be correct. <u>See</u> 28 U.S.C. § 2254(e)(1). The petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." <u>Id.</u>

Here, the petitioner fails to identify the specific rulings of the various state court decisions he is challenging, nor has he attempted to rebut any of the factual determinations made in the various state court decisions preceding his habeas petition with clear and convincing evidence. Moreover, the arguments in his reply brief that on remand the circuit court unreasonably applied the facts in this case by not considering the petitioner's argument concerning access to the treatment records and by failing to address each of the <u>Maday</u> factors is merely a restatement of the arguments that the state courts unreasonably applied clearly established Supreme Court precedent. These arguments have already been rejected by this court. Hence, the petitioner has failed to establish that the state court decisions disposing of his claims were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Accordingly, for all of the reasons stated herein, the petitioner is not entitled to a writ of habeas corpus. Therefore, the petitioner's petition for a writ of habeas corpus will be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of August, 2007.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge